# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT GOSS, JR.

     Plaintiff,                        Case No.

v.

CITIMORTGAGE, INC, NATIONSTAR
MORTGAGE, LLC d/b/a MR. COOPER,
SELECT PORTFOLIO SERVICING, INC,
and EXPERIAN, INC.,

     Defendants.

---

Jerome D. Goldberg (P61678)
Jerome D. Goldberg, PLLC
Attorney for Robert Goss Jr.
2727 Second Avenue, Suite 111
Detroit, MI 48201
313-393-6001
apclawyer@sbcglobal.net

                                                /

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, ROBERT GOSS, JR., by and through his

attorneys, JEROME D GOLDBERG, PLLC, and for his Complaint against

Defendants CITIMORTGAGE, INC., NATIONSTAR MORTGAGE, LLC D/B/A

MR. COOPER, SELECT PORTFOLIO SERVICING, INC and EXPERIAN states

as follows:

## PARTIES

1. Plaintiff, Robert Goss, resides at 6263 Malvern Dr., in the city of Troy, Oakland County, Michigan 48096.

2. Defendant, CitiMortgage, Inc., is a foreign corporation whose resident agent is The Corporation Company, 40600 Ann Arbor Road, Ste. 201, Plymouth, Michigan 48176.

3. Defendant, Nationstar Mortgage, LLC, is a limited liability company formed in Delaware, with its resident agent listed as CSC-Lawyers Incorporating Service, 3410 Belle Case Way, Suite 600, Lansing, MI 48911.

4. Defendant Select Portfolio Servicing, Inc. is a foreign corporation whose resident agent is CSC-Lawyers Incorporating Service, 3410 Belle Case Way, Suite 600, Lansing, MI 48911.

5. Experian, Inc. is a foreign corporation whose resident agent is The Corporation Company, 40600 Ann Arbor Road, Ste. 201, Plymouth, Michigan 48176.

## JURISDICTION/VENUE

6. The court has original federal question jurisdiction over Plaintiff's counts under the Fair Credit Reporting Act, 15 USC 1681, et. seq.

7. The court has an interest in exercising supplemental jurisdiction over Plaintiff's breach of contract claim, as it derives from the disregarding of an

order resolving a prior matter in the U.S. District Court, Eastern District of

Michigan, Case NO 2:16-cv-14391, in front of the Hon. Laurie Michelson.

## FACTUAL BACKGROUND

8. On July 28, 2005, Plaintiff entered a mortgage loan with ABN AMRO

Mortgage Group, Inc., in the amount of $208,000 for his home located at

6263 Malvern Dr., in the city of Troy, Oakland County, Michigan 48096.

9. On February 17, 2015, Plaintiff entered into a loan modification with

CitiMortgage, Inc., transferee servicer from ABN AMRO, for the mortgage

loan on his home. **Exhibit 1, attached, loan modification**.

10. The loan modification provided for a total principal owed of $247,211.26,

with $173,007.73 payable in monthly payments subject to a 4.375% interest

rate on that amount through 2/1/2055, and a deferred principal of $74,208.53

to be paid at the earliest of when Plaintiff sells the property, pays off the

$173,007.73 interest bearing amount, or at the 2/1/55 maturity date of the

loan. **See Exhibit 1**.

11. On November 7, 2016, CitiMortgage, Inc. transferred the servicing of the

mortgage loan to Nationstar Mortgage, LLC, d/b/a Mr. Cooper. **Exhibit 2,**

**attached, transfer from Citi to Nationstar.**

12. In 2017, Plaintiff filed a complaint against Defendants CitiMortgage and the

successor servicer Nationstar Mortgage stemming from illegal practices in

3

servicing the mortgage loan for his home which resulted in an illegal foreclosure of the property on December 20, 2016.

13. The complaint as amended was assigned Case No. 2:16-cv-14391 in the U.S. District Court, Michigan Eastern District and included counts for: 1. Breach of Contract; 2. Promissory Estoppel; 3. Wrongful Foreclosure under MCL 600.3204; 4. Violation of the Fair Debt Collection Act; 5. Violation of the Fair Credit Reporting Act; and 6, Quiet Title. **Exhibit 3, attached, complaint.**

14. On September 13, 2018, Defendants CitiMortgage, and Nationstar Mortgage, entered a settlement with Plaintiff, which was memorialized in an order signed and entered by Hon. Laurie J. Michelson, United States District Court Judge.

15. The settlement and order declared the Foreclosure Sale and Sheriff's Deed void ab initio and restored title to his home to Plaintiff.

16. The settlement and order reinstated the mortgage as amended and supplemented by the February 2015 loan modification.

17. The settlement and order further provided that CitiMortgage, Inc. and Nationstar Mortgage LLC would submit an Automated Universal Dataform to credit bureaus Experian, Equifax and Trans Union relative to the loan which would: "(a) suppress any information relating to past due payments

4

from February 1, 2015 through the date the Order is entered, and (b) to suppress any information relating to the Foreclosure sale."

18. The settlement and order further provided that "Nationstar will resume furnishing accurate information concerning the Loan following reinstatement of the Mortgage, on a going forward basis." **Exhibit 4, attached, settlement and order.**

19. On September 13, 2019, Nationstar Mortgage d/b/a Mr. Cooper transferred the servicing of Plaintiff's mortgage loan to Select Portfolio Servicing (SPS) effective October 1, 2019. **Exhibit 5, attached, transfer from Nationstar to SPS.**

20. Despite Nationstar transferring the servicing the Plaintiff's mortgage loan to SPS on October 1, 2019, and no longer having an interest in the mortgage loan after that date, Nationstar continued to report Plaintiff's mortgage loan as an active loan in the amount of $165,970, at least to credit bureau, Experian, from October 2019 through January 2022. **Exhibit 6, attached, June 8, 2020 and January 2022 credit reports.**

21. For example, the Experian credit report dated June 8, 2020, reported the Nationstar Mortgage loan as an active loan in the amount of $165,970, even though Nationstar's interest had been transferred to SPS Servicing. The report also separately reported the SPS loan as $237,547. Thus the credit

report showed Plaintiff as having a total loan debt of $403,517, far more than the actual total mortgage debt of $237,547 owed at that time. **See Exhibit 6.**

22. SPS's reporting of the mortgage debt of $237,547 was also deceptive, as it failed to note that Plaintiff was not required to make payments on the $74,208.53 portion of the mortgage debt which was deferred and non-interest bearing. Instead, as an example, on the October 11, 2023 report it listed the entire amount due on the mortgage as $230,110, which did not differentiate between the principal for which Plaintiff was making payments and were subject to interest on the loan which was $155,902.25, and the deferred principal of $74,208.53. The report also stated that the loan was 0% paid off, when in fact Plaintiff had reduced the principal subject to interest from the original amount of $173,007.73 as noted in the 2015 loan modification to $155.902.75, and the total amount owed including the deferred payment from $247,211.26 in 2015 to $230,110.00. **Exhibit 7, attached, October 11, 2023, credit report.**

23. The June 8, 2020, Experian report, and all the Experian reports through the current date, also list the CitiMortgage loan as a closed loan, but noted six payments on that loan as having been made between 30 and 60 days late, in

direct violation of the September 13, 2018, consent judgment and order. **See Exhibits 6-7.**

24. On June 9, 2020, Plaintiff was denied a $40,000 loan from Loanliner through the Michigan Schools and Government Credit Union, which he attempted to procure to cover payroll for his business, S & B Tires & Auto Repair Services LLC, 13145 Woodward, Highland Park, MI 48203. The denial listed the basis for the denial: "Excessive obligations in relation to income." **Exhibit 8, attached, Loanliner denial.**

25. In the years 2021 through 2023, Plaintiff also sought loans from the Cross River Paycheck Protection Program through Scratch Services, LLC. During that entire period he was only able to obtain one loan in the amount of $1770 to help with the expenses of operating his tire and auto repair service. **Exhibit 9, attached, Cross River records.**

26. Plaintiff's failure to be able to obtain payroll loans had a direct effect on his ability to secure necessary supplies and funds to run and expand the business, and eventually was a cause of his selling the business in 2023.

### COUNT I – VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 USC 1681, ET. SEQ.

27. Plaintiff incorporates paragraphs 1- 26.

28. Experian is a consumer reporting agency pursuant to 15 USC 1681(a).

29. Pursuant to 16 CFR 663(a), each furnisher of information to a credit reporting agency must implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency.

30.   15 USCS 1681(o) provides for actual damages plus payment of costs and attorney fees in favor of a plaintiff victimized by negligence in complying with the Fair Credit Reporting Act by a credit reporting agency or a furnisher of information to a credit reporting agency.

31. 15 USCS § 1681(n) provides for statutory damages and punitive damages for willful violations of the act.

32. In the present case, Defendants CitiMortgage, Nationstar and Select Portfolio Services, all violated the Fair Credit Reporting Act by:

a. CitiMortgage reporting delinquent payments in a closed account in direct violation of a court reporter to refrain from reporting alleged delinquent payments.

b. Nationstar Mortgage a/k/a Mr. Cooper reporting that Plaintiff had an open mortgage account on which he owed $165,000 from October 2019 to January 2022, when in fact, Nationstar had transferred its interest in Plaintiff's mortgage loan to SPC in September 2019. As a result, the total mortgage

reported as owed during those months was over $400,000 per year far greater than the $237,000 owed even including the deferred principal.

c. SPS Servicing failed to note that over $74,000 of Plaintiff's mortgage loan was delinquent and not subject to interest or payments until 2055. SPC falsely noted that Plaintiff had not paid any of the total principal on his mortgage loan, when in fact he had reduced the principal by approximately $20,000 thought payments from 2015 to 2023.

33. Defendant Experian violated 15 USC 1681(e) FCRC by not implementing proper procedures to protect against reporting inaccurate information on its credit reports, as was done it this case.

34. As a result of the actions of Defendants, Plaintiff suffered actual damages in the form of being denied payroll loans and credit critical for running his tire and auto repair business, as well as emotional damages.

35. Plaintiff is entitled to statutory damages for each violation.

36. Plaintiff is entitled to punitive damages for Defendants willful violation of the Fair Credit Reporting Act, as they violated a consent judgment and court order entered on September 13, 2018.

37. Plaintiff is also entitled to attorney and costs pursuant to 15 USC 1681(n) and (o).

## COUNT II – BREACH OF CONTRACT

38. Plaintiff incorporates paragraphs 1-37.

39. Defendants CitiMortgage and Nationstar Mortgage entered into a settlement that was memorialized in a court order on September 13, 2018.

40. A settlement and/or consent judgment is a contract pursuant to Michigan law.

41. Pursuant to the settlement, CitiMortgage, Inc. and Nationstar Mortgage LLC would submit an Automated Universal Dataform to credit bureaus Experian, Equifax and Trans Union relative to the loan which would: "(a) suppress any information relating to past due payments from February 1, 2015 through the date the Order is entered, and (b) to suppress any information relating to the Foreclosure sale." The consent judgment and order further provided that "Nationstar will resume furnishing accurate information concerning the Loan following reinstatement of the Mortgage, on a going forward basis." **See Exhibit 4.**

42. CitiMortgage breached this contract with Plaintiff by reporting alleged past due payments on the information it submitted to the credit reporting agencies from at least June 2020 through November 2023. **See Exhibit 6-7**.

43. Nationstar breached this contract with Plaintiff by reporting that it had an active mortgage loan with Plaintiff from October 2019 to January 2022,

even though it had no such active loan and had transferred its interest to SPS Servicing in September 2019. **See Exhibit 6**.

44. As a result of Defendants Nationstar and CitiMortgage breaches of their contracts with Plaintiff, Plaintiff suffered damages including but not limited to being denied payroll loans and credit critical to operating his tire and auto repair business in Highland Park, MI.

WHEREFORE: Plaintiff respectfully requests that this honorable court enter judgment for Plaintiff on his counts of Violation of the Fair Credit Reporting Act and Breach of Contract and award Plaintiff all damages to which he is entitled, including but not limited to:

1. Statutory damages, punitive damages, actual damages and attorney fees and costs for Defendants' violations of the Fair Credit Reporting Act; and

2. Damages for Defendants Nationstar and CitiMortgage's breach of their contracts with Plaintiff.

## JURY DEMAND

Plaintiff demands a trial jury in the above cause.

Respectfully submitted,
/s/ Jerome D. Goldberg
Jerome D. Goldberg (P61678)
Jerome D. Goldberg, PLLC
Attorney for Robert Goss Jr.
2727 Second Avenue, Suite 111
Detroit, MI 48201
313-393-6001
apclawyer@sbcglobal.net

DATE: December 29, 2023

# EXHIBIT 1



APN# 2006351008

Servicer Loan # 216117417

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420
O'Fallon, MO 63368-2240
Doc Prep/Booking & Closing

This document was prepared by: DANIELLE MCDONALD
With an office address of:
CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO   63368

_____[Space Above This Line For Recording Data]_____

**Original Principal Amount:** $ 208,900.00
**Unpaid Principal Amount:** $ 194,054.65
**New Principal Amount:** $ 173,002.73
**New Money (Cap):** $ 53,156.61

### LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Modification Agreement"), made this 17th day of February 2015, between   ROBERT LEE GOSS JR, a single person, ("Borrower") and ("Lender") **CitiMortgage, Inc.** **Successor by Merger to ABN AMRO Mortgage Group, Inc**, amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated    7/28/2005    and recorded in Book or Liber   36758, at page(s) 656,   or Document # 345618 of the OAKLAND Records of OAKLAND County, Michigan and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 6263 MALVERN, TROY, MI 48098, the real property described being set forth as follows:

    LOT 16, CHARNWOOD HILLS AS RECORDED IN LIBER 68, PAGE 14 OF PLATS, OAKLAND COUNTY RECORDS.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**1. Modified Principal Balance.** As of 02/01/15, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $ 247,211.26 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized

**2. Modified Terms.** $ 74,208.53 of the Unpaid Principal Balance shall be deferred and Borrower will not pay interest or make monthly payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 173,002.73. Interest at the rate of 4.37500%, will begin to accrue on the "Interest Bearing Principal Balance" as of 02/01/15  and the first new monthly payment on the Interest Bearing Principal Balance will be due on 03/01/15.  Borrower promises to make monthly payments of principal and interest of U.S. $ 763.91, beginning on the 1st day of March 2015, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been

paid in full. The new Maturity Date will be 02/01/55.
*The escrow payments may be adjusted periodically in accordance with applicable law and therefore borrower's total monthly payment may change accordingly.

**3. Deferred Principal Balance.** If any portion of the New Principal Balance was deferred, Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

**4. Partial Prepayments.** If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

**5. Due on Sale.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

**6. Original Loan Documents Compliance.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

b. all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

**7. Rights and Remedies; Enforcing Modification Agreement.** Borrower understands and agrees that:

a. All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

b. All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Modification Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise there under or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the

Note and Security Instrument are expressly reserved by Lender.

c. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. All costs and expenses incurred by Lender in connection with this Modification Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e. Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Modification Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f. If the Borrower does not occupy the property as a principal residence, and property is an investment property, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

Also, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default under this Modification Agreement, pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default

occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**8. Escrow Items.** Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

**9. Bankruptcy Provision.** Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement, I understand that I enter this Modification Agreement voluntarily and that this Modification Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or an attempt to collect any such obligation

**10. Signature Requirements.** Borrower(s) understand that the Lender's consent to this Modification Agreement is conditioned upon all Borrower(s) properly signing and returning this Modification Agreement without any alterations or deletions and making all monthly payments when due. Any person signing below who signed the Security Instrument but who did not sign the Note is signing only to modify the Security Instrument and to consent to the modification of the Note and is not personally obligated to pay the amounts owed under the Note or the sums Secured by the Security Instrument.

**11.** That, as of the Modification Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan.  Except as noted herein, this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

EXECUTED effective as of the day and year first above written.

ACCEPTED AND AGREED TO BY-

CitiMortgage, Inc. Successor by Merger to ABN AMRO Mortgage

Group, Inc.

Katrina Mason
Document Control Officer
CitiMortgage, Inc.

By: _____

Date: _____ 4-1-15 _____

ROBERT LEE GOSS JR.

Date: __ 2/25/2015 _____

State of Michigan
County of Oakland

On the ___25th___ day of ___February___, in the year ___2015___, before me, the undersigned, a Notary Public in and for said State, personally appeared ROBERT LEE GOSS JR, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by HIS/HER/THEIR signatures(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

My Commission Expires: ___5/15/2018___

D. Johnson-Flowers
**Notary Public, County of Wayne**
**State of Michigan**
**My Commission Expires May 15, 2018**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

State of

County of

On the _____ day of _____, in the year _____, before me, the undersigned, a Notary Public in and for said State, personally appeared , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by HIS/HER/THEIR signatures(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

My Commission Expires: _____

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

State of Missouri        )

County of St Charles    )

On _____ April 1, 2015 _____, before me appeared <u>Katrina Mason</u>, to me personally known, being duly sworn or affirmed did say that she is a <u>Document Control Officer Of CitiMortgage, Inc.</u>, and that said instrument was signed on behalf of said corporation, by authority of its Board of Directors, <u>Katrina Mason</u>, acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.



Notary Public

SHAWN LEE ROBERTS
My Commission Expires
August 29, 2017
Lincoln County
Commission #13521423

# EXHIBIT 4

# EXHIBIT 2

LIBER 50070 - PAGE 367
$21.00 MISC RECORDING
$4.00 REMONUMENTATION
$5.00 AUTOMATION
11/15/2016 01:46:39 PM RECEIPT# 137308
PAID RECORDED – Oakland County, MI
Lisa Brown, Clerk/Register of Deeds

OAKLAND COUNTY
REGISTER OF DEEDS

2016 NOV 15 PM 1: 48

## CORPORATE ASSIGNMENT OF MORTGAGE

Oakland, Michigan
**SELLER'S SERVICING #** ▉▉▉▉▉▉ "GOSS JR"
Date of Assignment November 7th, 2016
Assignor CITIMORTGAGE, INC SUCCESSOR IN INTEREST BY MERGER TO ABN AMRO MORTGAGE GROUP, INC , BY NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD , COPPELL, TX 75019

Executed By ROBERT LEE GOSS JR, A SINGLE PERSON To ABN AMRO MORTGAGE GROUP, INC
Date of Mortgage 07/28/2005 Recorded 12/13/2005 in Book/Reel/Liber 36758 Page/Folio 656 as Instrument
No 345618 In the County of Oakland, State of Michigan

Assessor's/Tax ID No 2006351008

Property Address 6263 MALVERN, TROY, MI 48098

Legal LOT 16, CHARNWOOD HILLS AS RECORDED IN LIBER 68, PAGE 14 OF PLATS, OAKLAND COUNTY
RECORDS

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $208,900 00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage

    CITIMORTGAGE, INC SUCCESSOR IN INTEREST BY MERGER TO ABN AMRO MORTGAGE GROUP, INC , BY
NATIONSTAR MORTGAGE LLC ITS ATTORNEY-IN-FACT
On November 7th, 2016

By _____
COLLEEN BARNETT, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On November 7th, 2016, before me, TIM JACKSON, a Notary Public in and for Dallas in the State of Texas, personally appeared COLLEEN BARNETT, Assistant Secretary of ABN AMRO MORTGAGE GROUP, INC , personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal,

_____
TIM JACKSON
Notary Expires 12/03/2019 #130457575

```
TIM JACKSON
Notary Public, State of Texas
Comm Expires 12-03-2019
Notary ID 13045757-5
```

(This area for notarial seal)

**Prepared By Bernardo Hernandez, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX
75019 1-888-480-2432**
 When Recorded Return To DOCUMENT ADMINISTRATION, Nationstar Mortgage 8950 CYPRESS WATERS
BLVD, COPPELL, TX 75019

*LF1*LF1NATT*11/07/2016 11 45 30 AM NATT01NATTA00000000000000741132* MIOAKLA* 0631027737 MISTATE_MORT_ASSIGN_ASSN **BHENATT

# EXHIBIT 3

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ROBERT GOSS, JR.                          Case No. 16-14391

     Plaintiff,                         Hon. Robert H. Cleland
                                 Hon. Magistrate Anthony P. Patti

v.

CITIMORTGAGE, INC,
And NATIONSTAR MORTGAGE, LLC,

     Defendants.

---

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, **ROBERT GOSS, JR.**, by and through his attorneys, VANESSA G. FLUKER, ESQ., PLLC, and for his First Amended Complaint against Defendants **CITIMORTGAGE, INC.** and **NATIONSTAR MORTGAGE, LLC,** states as follows:

### PARTIES

1.    Plaintiff, **Robert Goss**, resides at 6263 Malvern Dr., in the city of Troy, Oakland County, Michigan 48096.

2.    Defendant, **Citimortgage, Inc.,** is a foreign corporation with its resident agent The Corporation Company, 40600 Ann Arbor Road, Ste. 201, Plymouth, Michigan 48176

3.    Defendant, **Nationstar Mortgage, LLC**, is a limited liability company formed in Delaware, with its resident agent as CSC-Lawyers

Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823.

## JURISDICTION AND VENUE

4.      The issues presented in this case relate to the property 6263 Malvern, Dr., in the City of Troy, Oakland County, Michigan 48096, more particularly known as:

> Lot 16, CHARNWOOD HILLS as recorded in Liber 68, Page 14 of Plats, Oakland County Records.

5.      This Court has jurisdiction and venue over this matter since the amount in controversy exceeds $75,000, and there is diversity jurisdiction pursuant to 28 USC 1331 and 1332.

## INTRODUCTION

6.      Plaintiff hereby incorporates by reference Paragraphs 1 through 5, as though fully restated herein.

7.      Plaintiff Robert Goss' property was foreclosed once before after Plaintiff had entered into a trial modification gone awry.  Plaintiff had the previous foreclosure expunged and entered into a new modification in February 2015.

8.      Defendant Citimortgage capitalized on Plaintiff's modified loan fees owed for foreclosure services, taxes and insurance.  Plaintiff has timely made every payment under the modified mortgage contract.  Plaintiff has called and written letters as to inaccuracies in amounts owed and contrary escrow

2

delinquencies, when there was no escrow delinquency, at the time the modification was created. Defendant Citimortgage then transferred the loan to Nationstar Mortgage, LLC, who has not credited a single payment and has not adhered to the terms of the modified loan contract. Also as a consequence of Defendants' actions, negative entries remain on Plaintiff's credit report, which have resulted in his being turned down for a small business loan, a credit card and paying higher interest for his equipment at the small auto repair shop he owns. Plaintiff has further learned that it is a pattern and practice of Defendant Citimortgage and Defendant Nationstar Mortgage, LLC to inaccurately report modification payments resulting in homeowners being kicked out of the modification program and forced into foreclosure. In January of 2016, a Special Inspector for the US Government presented a report on the improper termination of homeowners from the HAMP program, and both Defendants Citimortgage and Nationstar Mortgage have been implicated by this investigation for improper conduct. (**Exhibit 1**, Special Inspector General Report: *Mortgage Servicers Have Wrongfully Terminated Homeowners Out Of The HAMP Program*)

9. Plaintiff seeks to **enjoin a sheriff's sale of his home scheduled for December 20, 2016**, to cause Defendants Citimortgage and it successor service Nationstar Mortgage to expunge any sheriff's deed, if one should be recorded during the pendency of this action and to cause Defendants and any other entity responsible, to remove their negative entries on his credit reports.

## FACTUAL BACKGROUND

10.     Plaintiff hereby incorporates by reference Paragraphs 1 through 9, as though fully restated herein.

11.     Plaintiff's home was foreclosed after a defective modification, and the sheriff's sale from that foreclosure was expunged. (**Exhibit 2,** Affidavit of Expungement, dated February 3, 2015)

12.     Plaintiff entered into a loan modification agreement with Defendant Citimortgage after completing the required trial modification process and making the required payments. (**Exhibit 3,** Loan Modification Contract)

13.     Plaintiff began making his monthly payment of $1,210.88, and made this payment timely each month from February 2016 through September 2016, when the loan was transferred to Defendant Nationstar Mortgage and Plaintiff's payments were refused. (**Exhibit 4,** Plaintiff's Bank Statements from February 2015, through October 2016)

14.     Plaintiff received some erroneous information from Defendant Citimrtgage regarding his escrow and change in mortgage payment, and Plaintiff requested Citimortgage correct the information.  Defendant Citmortgage sent a letter with the wrong payment amount and attached another borrower's information. (**Exhibit 5,** Citimortgage Letter, dated April 12, 2016)

15.     Plaintiff timely made all of the payments under the modification agreement and learned his payments were not being reported to the credit bureaus

as being paid.  Plaintiff sent a letter to Transunion and Experian disputing the reporting. Plaintiff received credit reports that were contrary to his payment history and the cashed checks, which even differed from each other with regard to the Plaintiff's payment history.  (**Exhibit 6,** Experian Credit Report [Excerpts]; **Exhibit 7,** Robert Goss, Jr. Letter to Transunion, dated March 24, 2016; **Exhibit 8**, Transunion Credit Report dated April 16, 2016 [Excerpts]; **Exhibit 9,** Transunion Credit Report, dated May 10, 2016 [Excerpts]; **Exhibit 10**, Robert Goss, Jr. Letter to Transunion)

16.     Plaintiff continued to make his monthly payment while seeking assistance for correction of the variable payment amounts from month-to-month in direct contradiction to the required monthly payments under the modification agreement. Each time Plaintiff would inquire, Defendant Citimortgage would send correspondence that did not address the issues raised by Plaintiff's inquiry. (**Exhibit 11,** Citimortgage Letters, dated May 20, 2016, May 26, 2016, and May 31, 2016)

17.     Plaintiff attempted to obtain corrections more formally and sent Defendant Citimortgage a RESPA Qualified Written Request Letter. (**Exhibit 12,** Robert Goss, Jr. Qualified Written Request Letter, dated June 8, 2016).  Defendant Citimortgage sent a letter dated June 13, 2016 that did not address any of the information requested in the Plaintiff's Qualified Written Request. (**Exhibit 13,** Citimortgage Letter dated June 13, 2016)

18.    Plaintiff, after having no correspondence with Defendant Citimortgage, received a letter dated August 8, 2016 soliciting Plaintiff for loss mitigation on the loan.  (**Exhibit 14**, Citimortgage Letter dated August 4, 2016)

19.    Plaintiff never received any further correspondence from Defendant Citimortgage; however, Plaintiff began receiving letters from Defendant Nationstar Mortgage indicating they had no record of any payments **since June of 2016**, when in fact, the money for the payments had been removed from Plaintiff's bank account by Defendant Citimortgage.  (**Exhibit 15**, Nationstar Mortgage Letter dated September 2, 2016) *See also*, **Exhibit 4**, Bank Statements)

20.    Plaintiff next received a letter from Nationastar Mortgage dated September 7, 2016, advising Plaintiff that he needed a loan specialist despite Plaintiff making every payment.  (**Exhibit 16**, Nationstar Mortgage Letter dated September 7, 2016)

21.    Plaintiff sent his payment to Defendant Nationstar Mortgage, only to receive a statement and a copy of his returned payment.  (**Exhibit 1**7, Nationstar Mortgage Statement dated October 18, 2016 and copy of returned check)

22.    Plaintiff further received a letter from Nationstar Mortgage dated November 18, 2016 and the returned check for his mortgage payment.  (**Exhibit 18**, Nationstar Mortgage Letter dated November 18, 2016 and returned check)

23.    Plaintiff again attempted to pay his monthly modified mortgage amount, and it was again returned by Defendant Nationstar Mortgage in a letter

dated December 7, 2016. (**Exhibit 19**, Nationstar Mortgage Letter dated December , 2016)

24.     Plaintiff also received a letter and a check from Defendant Nationstar Mortgage, indicating it was some type of refund. Plaintiff had no idea of what this check represented and has not cashed the checked, but retained the check. (**Exhibit 20**, Nationstar Mortgage Letter and check for refund)

25.     As a result of wrongful negative entry on his credit report, Plaintiff has been denied a business loan (**Exhibit 21,** Citizens Bank Loan Denial), a credit card (**Exhibit 22,** Bank of America Credit Card Denial), and has had an increase in the cost of supplies for his small business because of the higher interest, due to Defendants negative credit reporting.

26.     Plaintiff's home was taken to sheriff's sale on December 20, 2016, for an alleged default and failure to make monthly payments. Plaintiff never missed payments and has continued to make payments. **Defendant Nationstar Mortgage, LLC has accepted Plaintiff's payments for January 2017, February 2017, March 2017, and April 2017.** (**Exhibit 23**, Plaintiff's Cashed Checks for 2017 Monthly Mortgage Payments)

27.     Plaintiff has been prejudiced by the Defendants conduct by taking his home to foreclosure when Plaintiff has timely paid the monthly modified amount. **Plaintiff is being harassed at his home with people coming onto the property because it is foreclosure seeking entry of the home.** Plaintiff has experienced

business losses for increased expenses and costs, due to the adverse credit reporting and has been denied business loans that would enhance Plaintiff's business profitability. Plaintiff requests an immediate enjoinment of the Defendants and its agents from proceeding with the foreclosure and a stay of redemption until this litigation is completed.

## <u>COUNT I:</u><br>BREACH OF CONTRACT

28.　　Plaintiff hereby incorporates by reference Paragraphs 1 through 28, as though fully restated herein.

29.　　The elements of a valid and enforceable contract are (1) parties competent to contract; (2) offer and acceptance; (3) consideration; and (4) mutuality of obligation.

30.　　Plaintiff and Defendant Citmortgage and successor servicer Nationstar Mortgage, LLC, are parties competent to contract.

31.　　There was an offer of a permanent modification agreement made by Defendant Citmortgage and successor servicer Nationstar Mortgage to Plaintiff, which Plaintiff accepted by executing the agreement and performing under it.

32.　　The consideration under the agreement was the extension of a permanent loan modification in a new principal amount.

33.　　There was mutuality of obligation in that Plaintiff was to repay the new loan and Defendant Citmortgage and successor servicer Nationstar Mortgage was to refrain from foreclosing its mortgage in exchange thereof.

8

34.     Thus, the agreement between Plaintiff and Defendant Citmortgage and successor servicer Nationstar Mortgage was a valid and enforceable permanent loan modification agreement. (*See*, **Exhibit 3**)

35.     Plaintiff performed under the agreement by making his payments.

36.     Defendant Citmortgage and successor servicer Defendant Nationstar Mortgage breached the agreement by illegally foreclosing on Plaintiff's mortgage, which constitutes performance that does not conform to the agreement's requirements that Defendants not foreclose so long as Plaintiff performed under the agreement.

37.     As a result, the sheriff's sale is imminent resulting from Defendant Citmortgage and successor servicer Defendant Nationstar Mortgage's breach of the aforesaid agreements must be stopped and/or expunged.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.     Enjoin the December 20, 2016 sheriff's sale and/or order an expungement; and

B.     Order Defendant Citmortgage and successor servicer Defendant Nationstar Mortgage to pay all damages including costs and attorney fees to which Plaintiff is entitled under the law.

## <u>COUNT II:</u>
## PROMISSORY ESTOPPEL

38.     Plaintiff hereby incorporates by reference Paragraphs 1 through 36, as though fully restated herein.

39.     Promissory estoppel is evident when (1) there is a promise by a defendant that is reasonably expected to induce action or forbearance by the plaintiff; (2) there is inducement of such an action or forbearance by the plaintiff; and (3) injustice will be avoided only if a promise is enforced.

40.     Through the permanent loan modification agreement, Defendant Citmortgage and successor servicer Nationstar Mortgage promised to Plaintiff that if he repaid the modified loan, Defendant Citmortgage and successor servicer Nationstar Mortgage would not foreclose on Plaintiff's mortgage.

41.     Plaintiff made the payments to Defendant Citmortgage and successor servicer Nationstar Mortgage, based on that promise.

42.     Injustice can be avoided only by requiring Defendant Citmortgage and successor servicer Nationstar Mortgage to stop the sheriff's sale or expunge the 2016 sheriff's deed.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.     Order that the the sheriff's sale be enjoined and or 2016 sheriff's deed be expunged; and

B.     Require Defendant Citmortgage and successor servicer Nationstar Mortgage to pay all damages including costs and attorney fees to which Plaintiff is entitled under the law.

## COUNT III:
## WRONGFUL FORECLOSURE UNDER MCL 600.3204

43.     Plaintiff hereby incorporates by reference Paragraphs 1 through 41, as though fully restated herein.

44.     MCL 600.3204 requires that in order to foreclose, there must be a valid default.

45.     The Defendants made no diligent inquiries regarding the payment, but merely sent boilerplate letters to the Plaintiff moving his property toward foreclosure when Defendants knew or should have known Plaintiff had made all the required payments timely, and in accordance with the modification agreement. (*See*, **Exhibits 3-4**)

46.     Had the Defendants made a diligent inquiry regarding the payments, the payments could have been properly applied and there would have been no erroneous default and illegal foreclosure.

47.     A default declared under such circumstances as these, is not valid.

48.     Therefore, Defendants lack standing to foreclose on the Plaintiff's property.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.     Order the Defendants to enjoin the sheriff's sale and/ or to rescind the foreclosure proceedings; and

B.     Require the Defendants to pay all damages, including costs and attorney fees, to which Plaintiff is entitled under the law.

## COUNT IV:
## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT, 15 USCS SECTION 1692, ET. SEQ.

48.    Plaintiff hereby incorporates by reference Paragraphs 1 through 47, as though fully restated herein.

49.    Defendants Citimortgage and Nationstar Mortgage are debt collectors, as defined under 15 USCS Section 1692(a).

50.    Defendants have violated Sections1692 of the Fair Debt Collection Act by:

    a.    Failing to properly and completely validate the debt of Counter Plaintiffs despite numerous oral request and a written request being made. (*See*, **Exhibits 12**)

    b.    Initiating collection action on an erroneous debt, before validation, despite numerous requests being made by Plaintiff.

    c.    Using false representations as to the amount of the debts as a means to collect or attempt to collect the debt.

51.    Defendants violated Section 1692 of the Fair Debt Collection Practices Act by attempting to collect an amount for the debt which is not expressly authorized by the agreement creating the debt or permitted by law.

52.    Defendants' violations of the act were intentional or at least reflected the lack of the maintenance of procedures reasonably adapted to avoid the errors that were made.

53.    As a result of Defendants' violations of the Fair Debt Collection Practices Act, Plaintiff has suffered actual damages of adverse credit reporting

resulting in a denial of a business loan and a credit card, as well as, emotional distress.

WHEREFORE, as a direct result of Defendants' violations of the Fair Debt Collection Practices Act, Plaintiff respectfully prays that judgment be entered against Defendants for the following:

    a.    Declaratory judgment that Defendants' conduct violated the Federal Debt Collections Practices Act;

    b.    Actual damages, including emotional distress;

    c.    Statutory damages pursuant to Section 1692k(2)(B)

    d.    Costs and attorney fees.

## COUNT V:
## VIOLATION OF THE FEDERAL FAIR CREDIT REPORTING ACT, 15 USCS SECTION 1681 *ET SEQ.*

54.    Plaintiff hereby incorporates by reference Paragraphs 1 through 53, as though fully restated herein.

55.    Plaintiff is a consumer within the meaning of 15 U.S.C. § 1681a(c).

56.    Defendants are, upon information and belief, corporations authorized to transact business in the State of Michigan and are furnishers of consumer information, as that term is used in the FCRA, and therefore subject to the requirements of 15 USC §1681s-2(a).

57.    Despite the fact that Plaintiff's loan was modified and the 2016 sheriff's sale should not take place, Defendants Citimortgage and Nationstar Mortgage have reported and continue to report to three credit reporting agencies that Plaintiff is delinquent or default on his loan.

58. As a result of this negative reporting Counter Plaintiff's credit score has dropped.

59. As a result of this negative reporting, Plaintiff was denied for a business loan (*See,* **Exhibit 21**) and a credit card (*See,* **Exhibit 22**)

60. Despite having full knowledge that an egregious error was made with respect to the wrongful foreclosure pending in 2016, Defendants have continued to verify to each of the three major reporting agencies that Plaintiff was foreclosed upon and have ongoing delinquencies.

61. The above-described conduct violated the Fair Credit Reporting Act, including but not limited to, 15 USC §1681s-2(a), in that Defendant knew the adverse reporting of the foreclosure on Plaintiff to the three major credit reporting agencies was wrongful.

62. At all times referenced herein, the conduct and action of Defendants were negligent and/or willful.

63. In continuing to violate the Act, Defendants have acted intentionally, willfully, recklessly, and in total disregard of Plaintiff's rights.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has been denied credit on numerous occasions.

65. Plaintiff made requests for corrections of his credit reports but Defendants continue to affirm the erroneous information.

14

66.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered significant humiliation, frustration, embarrassment, anxiety, and loss of self-esteem and self-worth.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.     Award a judgment for actual and statutory damages under 15 USC §1681 *et seq.*, in an amount to be determined at trial.

B.     Award punitive damages for willful and intentional misconduct in an amount to be determined at trial pursuant to 15 USC §1681 *et seq.*

C.     Award Plaintiff his costs and a reasonable attorney fee as permitted by statute under 15 USC §1681 *et seq.*; and

D.     Grant any and all relief Plaintiff is entitled to, along with reasonable attorney fees and costs.

## COUNT VI:
## QUIET TITLE

67.     Plaintiff hereby incorporates by reference Paragraphs 1 through 66, as though fully restated herein.

68.     MCL 600.2934 provides for an action to quiet title.

69.     In the present case, because the 2016 foreclosure was carried out illegally for all the reasons outlined above, it must be declared void and title restored to the Plaintiff.

70.     Plaintiff is entitled to have title restored to his name.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.      Quiet title in favor of Plaintiff; and

B.      Order the foreclosure and sheriff's sale that gave title to Defendant Citimortgage and its successor Defendant Nationstar void.

## COUNT VII — VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA) AS TO CITIMORTGAGE

71.     Plaintiff hereby incorporates by reference Paragraphs 1 through 71, as though fully restated herein

72.     Defendant, Citimortgage, Inc., is a servicer of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. 2605.

73.     Plaintiff, after receiving inaccurate billing information and inaccurate allegations of arrearage and mortgage default, inquired about information on his account and for correction of the errors made.  (*See* **Exhibit 12**)

74.     Defendant Citimortgage, failed to respond to Plaintiff's inquiry and make the necessary corrections to their mortgage, in violation of 12 U.S.C. 2605(e).  As a result of Defendant's failure to comply with 12 U.S.C., 2605, Plaintiff has been subjected to illegal foreclosure based on an erroneous debt, the attempted wrongful sale of her property, along with financial damages and emotional distress.

75.     Plaintiff has significantly been damaged and suffered prejudice by Defendant Citimortgage's violation by suffering an erroneous and illegal home

foreclosure, paying higher interest rate on equipment for his business being denied for credit, and being denied for a business loan. (*See* Exhibits 6-10, 21-22)

76.     As a result of Defendant Citimortgage's violation of RESPA 12 USC 2605, Plaintiff has suffered actual and statutory damages in an amount to be determined at trial.

Respectfully submitted,

**VANESSA G. FLUKER, ESQ., PLLC**

BY:   Vanessa G. Fluker
      Vanessa G. Fluker (P64870)
      Attorney for Plaintiff
      2727 Second Ave., Ste. 111
      Detroit, Michigan 48207
      (313) 393-6005
Dated:  May 9, 2017      vgflawyer@sbcglobal.net

### JURY DEMAND

Plaintiff, ROBERT GOSS, JR., hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**VANESSA G. FLUKER, ESQ., PLLC**

BY:   Vanessa G. Fluker
      Vanessa G. Fluker (P64870)
      Attorney for Plaintiff
      2727 Second Ave., Ste. 111
      Detroit, Michigan 48207
      (313) 393-6005
Dated:  May 9, 2017      vgflawyer@sbcglobal.net

# EXHIBIT 4

RECEIVED
OAKLAND COUNTY
REGISTER OF DEEDS

2018 SEP 14  PM 12: 54

151416
LIBER 52182 PAGE   395
$26.00 MISC RECORDING
$4.00 REMONUMENTATION
09/14/2018 12:58:55 P.M.  RECEIPT# 104644
PAID   RECORDED - OAKLAND COUNTY
LISA BROWN, CLERK/REGISTER OF DEEDS

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ROBERT GOSS, JR.,

     Plaintiff,

-vs-               Case No. 2:16-cv-14391
                     Hon. Laurie J. Michelson

CITIMORTGAGE, INC.,
NATIONSTAR MORTGAGE, LLC,
And ZANA ZAITOUNA,

     Defendants.

_____

### STIPULATED ORDER SETTING ASIDE DECEMBER 20, 2016 FORECLOSURE SALE AS VOID *AB INITIO*, REINSTATING PLAINTIFF'S MORTGAGE AND DISMISSING PLAINTIFF'S CLAIMS FOR QUIET TITLE AND OTHER EQUITABLE RELIEF WITH PREJUDICE AND WITHOUT COSTS

Plaintiff Robert Goss, Jr. ("Goss") and Defendants CitiMortgage, Inc.

("CMI"), Nationstar Mortgage LLC ("Nationstar") and Zana Zaitouna

("Zaitouna"), through their respective counsel, stipulate and agree to this Order and

state as follows:

OK - AB

WHEREAS, Goss received a loan in the amount of $208,900.00 on July 28, 2005 ("Loan"), evidenced in part by a promissory note payable to the order of ABN AMRO Mortgage Group, Inc. ("Note");

WHEREAS, to secure the Loan, Goss granted a mortgage to ABN AMRO Mortgage Group, Inc. and its successors and assigns, which mortgage was recorded on December 13, 2005 in Liber 36758, Page 656 in the Register of Deeds in Oakland County, Michigan ("Mortgage");

WHEREAS, the Mortgage encumbered real property situated in the City of Troy, County of Oakland, State of Michigan and more particularly described as follows:

> Lot 16, Charnwood Hills as recorded in Liber 68, Page 14 of Plats, Oakland County Records.
>
> Commonly known as 6263 Malvern, Troy, MI 48098
> Tax I.D. No. 20-06-351-008
>
> (collectively, "Property");

WHEREAS, on February 17, 2015, Goss and CMI entered into a Loan Modification Agreement that amended and supplemented the terms of the Mortgage and the Note, which Loan Modification Agreement was recorded on April 15, 2015 in Liber 48078, Page 854 in the Register of Deeds in Oakland County, Michigan ("Loan Modification");

WHEREAS, the Mortgage, as amended and supplemented by the Loan

Modification, was assigned to Nationstar on November 7, 2016, which assignments were recorded on November 15, 2016 in Liber 50070, Page 367 and on November 16, 2016 in Liber 50075, Page 678 in the Register of Deeds in Oakland County, Michigan ("Assignments");

WHEREAS, Nationstar foreclosed the Mortgage, as amended and supplemented by the Loan Modification, and caused the Property to be sold at a Sheriff Sale on December 20, 2016 ("Foreclosure Sale");

WHEREAS, Zaitouna purchased the Property at the Sheriff's Sale for $199,747.20 and received the Sheriff's Deed on Mortgage Sale attached as **Exhibit A** ("Sheriff's Deed"), which Sheriff's Deed was recorded on July 12, 2017 in Liber 50854, Page 731 in the Register of Deeds for Oakland County, Michigan;

WHEREAS, Goss filed this action seeking, among other relief, an order quieting title to the Property and setting aside the Foreclosure Sale and Sheriff's Deed;

WHEREAS, without any admission of liability of any kind, the parties have agreed to reinstate the Mortgage, as amended and supplemented by the Loan Modification, and to set aside the Foreclosure Sale and Sheriff's Deed as void *ab initio* and of no further force and effect pursuant to the terms of this Order;

THEREFORE, pursuant to the parties' stipulation and agreement, IT IS HEREBY ORDERED:

1.    The Foreclosure Sale is set aside and deemed void *ab initio*.

2.    The Sheriff's Deed is set aside and deemed void *ab initio*.

3.    The Mortgage, as amended and supplemented by the Loan Modification, is reinstated in accordance with its original priority and in full force and effect as if the Foreclosure Sale never occurred.

4.    Nationstar is the current holder of the Mortgage, as amended and supplemented by the Loan Modification, pursuant to the Assignments.

5.    Within 60 days of entry of this Order, CMI will pay Nationstar the agreed amount required to bring the Loan current through the November 1, 2018 monthly payment.

6.    Goss agrees that any and all funds being held by Nationstar in a suspense account, including any funds from payments Goss voluntarily made after the Foreclosure Sale, may be applied consistent with the terms of the Note and Mortgage, as amended and supplemented by the Loan Modification, including toward the payment of delinquent taxes and homeowners' insurance on the Property and/or to bring the Loan current through November 1, 2018.

7.    Nationstar will return the proceeds from the Foreclosure Sale in the amount of $199,747.20 to Zaitouna within 30 days of entry of this Order.

8.     CMI will pay Zaitouna the additional agreed upon amount as set forth in an email between CMI's and Zaitouna's counsel dated September 5, 2018 within 30 days of entry of this Order.

9.     Within sixty (60) days of entry of this Order, CMI and Nationstar will each submit an Automated Universal Dataform ("AUD") to Experian, Equifax, and Trans Union (collectively, "the Credit Bureaus") requesting that the Credit Bureaus update Plaintiff's tradeline(s) relating to the Loan as follows: (a) to suppress any information relating to past due payments from February 1, 2015 through the date this Order is entered, and (b) to suppress any information relating to the Foreclosure Sale. Plaintiff understands and agrees that the Credit Bureaus are third parties over which Nationstar and CMI have no control and that Nationstar and CMI will have no liability for the Credit Bureaus' failure to comply with Nationstar's and CMI's requests for an update to his credit report, so long as Nationstar and CMI each submit an AUD requesting the updates set forth in this paragraph for the respective time periods during which each serviced the Loan. Nationstar will resume furnishing accurate credit information concerning the Loan following the reinstatement of the Mortgage, on a going forward basis.

10.     Plaintiff's Second Amended Complaint (Doc. 35) is dismissed in its entirety with prejudice and without costs as to Zaitouna only.

11.     Plaintiff's Count VI in his Second Amended Complaint (Doc. 35) for

Quiet Title, and his request for equitable relief relating to the Foreclosure Sale, including to enjoin or rescind the Foreclosure Sale, against CMI and Nationstar are hereby dismissed with prejudice and without costs.  The remainder of Plaintiff's claims against CMI and Nationstar are not affected by this Order.

12.    Within 14 days after the Court signs this Order, Nationstar's counsel will record a copy of this Order with the Oakland County Register of Deeds, which recording shall provide notice of the rescission of the Foreclosure Sale and Sheriff's Deed *ab initio*.

This Order does not close the case.

IT IS SO ORDERED.

Dated: September 13, 2018          s/Laurie J. Michelson
                                   UNITED STATES DISTRICT JUDGE

**Stipulations:**

By: /s/ Vanessa Fluker
Vanessa G. Fluker (P64870)
VANESSA G. FLUKER, ESQ., PLLC
*Attorneys for Plaintiff*
2727 Second Avenue, Suite 111
Detroit, MI 48207
(313) 393-6005
vgflawyer@sbcglobal.net

By: /s/Amy Sabbota Gottlieb
Amy Sabbota Gottlieb
(P67020)
DICKINSON WRIGHT PLLC
*Attorneys For CitiMortgage*
*and Nationstar*
2600 West Big Beaver Road,
Suite 300
Troy, MI 48084
(248) 433-7200
agottlieb@dickinsonwright.com

By: /s/ Matthew Mitchell
Matthew Mitchell (P69810)
*Co-Counsel For Nationstar*
MADDIN, HAUSER, ROTH &
HELLER, P.C.
28400 Northwestern Highway
Suite 200-Essex Centre
Southfield MI 48034
(248) 354-4030
mmitchell@maddinhauser.com

By: /s/ Alan C. Applebaum
Alan C. Applebaum (P36444)
*Attorneys For Zaitouna*
31550 Northwestern Highway,
Ste. 110
Farmington Hills, MI 48334
(248) 538-2700
mlalan77@aol.com

Dated: September 12, 2018

# EXHIBIT 5

**mr. cooper**
CHANGING THE FACE OF HOME LOANS

8950 Cypress Waters Blvd.
Coppell, TX 75019

**OUR INFO**
**ONLINE**
www.mrcooper.com



168017.1-NNNN-39167908.552

ROBERT GOSS
6263 MALVERN DR
TROY, MI 48098

9/13/2019

**YOUR INFO**
**LOAN NUMBER:** 631027737
**PROPERTY ADDRESS:**
6263 MALVERN DR
TROY, MI 48098

Dear ROBERT GOSS:

The servicing of your mortgage loan, that is, the right to collect payments from you, is being transferred from Mr. Cooper to Select Portfolio Servicing Inc, effective 10.01.19.

This transfer does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan such as where to send your payments or make inquiries related to the mortgage loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Mr. Cooper. If you have any questions relating to the transfer of servicing, please do not hesitate to contact our Customer Service Department at 888-480-2432 or via mail at the address listed above. Our hours of operation are Monday through Thursday from 7 a.m. to 8 p.m. (CT), Friday from 7 a.m. to 7 p.m. (CT) and Saturday from 8 a.m. to 12 p.m. (CT).

**Your new Servicer will be Select Portfolio Servicing Inc. If you have any questions relating to the transfer of servicing to your new servicer, you may call the Customer Service Department of your new servicer at 1.800.258.8602 between the hours of 8 AM - 11 P (ET) Mon - Thur, 8 AM - 9 PM Fri, & 8 AM - 2 PM Sat.**

Mr. Cooper is a brand name for Nationstar Mortgage LLC. Nationstar Mortgage LLC is doing business as Nationstar Mortgage LLC d/b/a Mr. Cooper. Mr. Cooper is a registered service mark of Nationstar Mortgage LLC. All rights reserved.

**Nationstar Mortgage LLC d/b/a Mr. Cooper is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if you are currently in bankruptcy or have received a discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally to the extent that it is included in your bankruptcy or has been discharged, but is provided for informational purposes only.**

If you are a successor in interest (received the property from a relative through death, devise, or divorce, and you are not a borrower on the loan) that has not assumed, or otherwise become obligated on the debt, this communication is for informational purposes only and is not an attempt to collect a debt from you personally.

**EQUAL HOUSING OPPORTUNITY**

168017.1-NNNN-142408243-552.1





Please note the following important address information for **Select Portfolio Servicing Inc**:

Correspondence Address:
Select Portfolio Servicing Inc
PO Box 65250
Salt Lake City, UT 84165-0250

Payment Address:
Select Portfolio Servicing Inc
PO Box 65450
Salt Lake City, UT 84165-0450

**The date that your present servicer will stop accepting payments from you is 09.30.19. The date that your new servicer will start accepting payments from you is 10.01.19.  Send all payments due on or after that date to your new servicer.**

The transfer of the servicing of the mortgage loan will require you to contact all hazard and flood insurers to add Select Portfolio Servicing Inc as loss payee at the below address.  For escrow accounts, insurers need to send billing statements/invoices to the Select Portfolio Servicing Inc Loss Payee. **Be sure to provide Select Portfolio Servicing Inc with a copy of the Notice to the Insurance Provider.**

Select Portfolio Servicing Inc
as Servicer, Its Successors and or Assigns
PO Box 7277
Springfield, OH 45501-7277

If your loan has optional insurance, your mortgage life insurance, disability insurance and/or other optional products will be discontinued at the time of transfer. If you wish to maintain coverage, you must contact your provider about direct billing.  If your loan does not have optional products, and you wish to obtain them, you will need to contact your new service provider.

If you are making payments to the present servicer by means of automatic deduction, this service will not continue with the new servicer, and any payments currently scheduled to draft after the effective transfer date 10.01.19,  will be cancelled. To set up automatic deduction with your new servicer, please contact their customer service department.

If you authorize your bank or credit union online bill payment system to automatically pay your mortgage payment, you will need to tell your bank or credit union to make those payments to the new servicer.

If you are currently participating in, or being considered for, a foreclosure avoidance program or loan modification program, we will be transferring any supporting documentation you may have submitted to us to your new servicer. Until the transfer date, you should continue to make your payments (i.e., trial payments, if attempting to qualify for a modification) to us. After transfer, you should make all payments to **Select Portfolio Servicing Inc** until such time that you are provided additional direction.  Unless you have received a decision from us regarding qualification for these programs, decisions regarding qualification for these programs will be made by Select Portfolio Servicing Inc . If you have received a decision from us, Select Portfolio Servicing Inc will be advised of that decision and will complete the processing of your workout, in accordance with that decision.

**mr. cooper**

CHANGING THE FACE OF HOME LOANS

Under federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late and a late fee may not be imposed on you.

Sincerely,

Mr. Cooper

168017.1-NNNN-14240824З-552.3

**mr.**
**cooper**
CHANGING THE FACE OF HOME LOANS

This Page Intentionally Left Blank

168017.1-NNNN-142408243-552.4*

# EXHIBIT 6



Prepared For

**ROBERT L. GOSS**

Personal & confidential

Date generated: Jan 5, 2022

**At a glance**



FICO® Score 8

**764** FICO SCORE 8
Experian data Jan 5, 2022

300 ——————————— 850
Very Good

| Account summary | |
|---|---|
| Open accounts | 7 |
| Self-reported accounts | 1 |
| Accounts ever late | 0 |
| Closed accounts | 5 |
| Collections | 0 |
| Average account age | 8 yrs 5 mos |
| Oldest account | 16 yrs 6 mos |



**Overall credit usage**

**13 %**

Credit used: **$3,368**
Credit limit: **$26,100**

| Debt summary | |
|---|---|
| Credit card and credit line debt | $3,368 |
| Self-reported account balance | $130 |
| Loan debt | $410,255 |
| Collections debt | $0 |
| Total debt | $413,753 |



Prepared For **ROBERT L. GOSS**    **Date generated:** Jan 5, 2022

●NATIONSTAR/MR COOPER                                                                    $165,970

**Exceptional** payment history                                              Balance updated Jan 31, 2019

### Account info

| | | | |
|---|---|---|---|
| Account name | **NATIONSTAR/MR COOPER** | Balance | **$165,970** |
| Account number | **631027XXX** | Balance updated | **Jan 31, 2019** |
| Original creditor | **-** | Original balance | **$208,900** |
| Company sold | **-** | Paid off | **21%** |
| Account type | **Mortgage** | Monthly payment | **$1,157** |
| Date opened | **Jul 28, 2005** | Past due amount | **-** |
| Open/closed | **Open** | Terms | **480 Months** |
| Status | **Current** | Responsibility | **Individual** |
| Status updated | **Jan 2019** | Your statement | **-** |

### Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | ✓ | - | - | - | - | - | - | - | - | - | - | - |
| 2018 | - | - | - | - | - | - | - | - | - | - | - | ✓ |

✓ On Time          - Data Unavailable

### Contact info

| | |
|---|---|
| Address | **8950 CYPRESS WATERS BLVD COPPELL, TX 75019** |
| Phone number | **(888) 480-2432** |

### Comments

**Account information disputed by consumer**



Prepared For **ROBERT L. GOSS**   **Date generated:** Jan 5, 2022

| SELECT PORTFOLIO SVCIN | $234,056 |
|---|---|
| **Exceptional** payment history | Balance updated **Dec 10, 2021** |

## 🔠 Account info

| | | | |
|---|---|---|---|
| Account name | **SELECT PORTFOLIO SVCIN** | Balance | **$234,056** |
| Account number | **277002XXXXXXX** | Balance updated | **Dec 10, 2021** |
| Original creditor | - | Original balance | **$208,900** |
| Company sold | - | Paid off | **0%** |
| Account type | **Mortgage** | Monthly payment | **$1,199** |
| Date opened | **Jul 28, 2005** | Past due amount | - |
| Open/closed | **Open** | Terms | **588 Months** |
| Status | **Current** | Responsibility | **Individual** |
| Status updated | **Dec 2021** | Your statement | - |

## 💲 Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2019 | - | - | - | - | - | - | - | - | - | - | - | ✓ |

✓ On Time     - Data Unavailable

## ✉ Contact info

| | |
|---|---|
| Address | **PO BOX 65250 SALT LAKE CITY, UT 84165** |
| Phone number | **By mail only** |

## 📄 Comments

-



Prepared For **ROBERT L. GOSS**    Date generated: Jan 5, 2022

## Closed accounts



**CITIMORTGAGE INC**                                                                                                          Closed

6 late payments

### Account info

| | | | |
|---|---|---|---|
| Account name | CITIMORTGAGE INC | Balance | - |
| Account number | 216117XXX | Balance updated | Aug 31, 2016 |
| Original creditor | - | Original balance | $208,900 |
| Company sold | - | Monthly payment | - |
| Account type | Mortgage | Past due amount | - |
| Date opened | Jul 28, 2005 | Terms | 480 Months |
| Open/closed | Closed | Responsibility | Individual |
| Status | Account transferred to another office | Your statement | - |
| Status updated | Aug 2016 | | |

### Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | 30 | ✓ | 30 | 30 | - | 60 | 60 | NA | - | - | - | - |
| 2015 | - | - | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 | ✓ |
| 2014 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2013 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2012 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2011 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2010 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2009 | - | - | - | - | - | - | - | - | ✓ | ✓ | ✓ | - |

✓ On Time    30 30 Days Late    60 60 Days Late

NA No Applicable Payment History    - Data Unavailable

### Contact info

| | |
|---|---|
| Address | PO BOX 9438 GAITHERSBURG, MD 20898 |
| Phone number | (800) 283-7918 |

### Comments

**Account information disputed by consumer**



Prepared For
**ROBERT GOSS**
Personal & confidential
**Date generated:** Jun 8, 2020

## At a glance



FICO® Score 8

300 — 850

| Account summary | |
|---|---|
| Open accounts | 4 |
| Self-reported accounts | 0 |
| Accounts ever late | 1 |
| Closed accounts | 5 |
| Collections | 0 |
| Average account age | 11 yrs 1 mo |
| Oldest account | 21 yrs 5 mos |

**Overall credit usage**



**6 %**

■ Credit used: **$687**
■ Credit limit: **$12,450**

| Debt summary | |
|---|---|
| Credit card and credit line debt | $687 |
| Self-reported account balance | $0 |
| Loan debt | $403,517 |
| Collections debt | $0 |
| Total debt | $404,204 |

 experian.

Prepared For **ROBERT GOSS**   Date generated: Jun 8, 2020

● NATIONSTAR/MR COOPER                                         $165,970

**Exceptional** payment history                        Balance updated Jan 31, 2019

## Account info

| | | | |
|---|---|---|---|
| Account name | **NATIONSTAR/MR COOPER** | Balance | **$165,970** |
| Account number | **631027XXX** | Balance updated | **Jan 31, 2019** |
| Original creditor | **-** | Original balance | **$208,900** |
| Company sold | **-** | Paid off | **21%** |
| Account type | **Conventional Real Estate Loan, Including Purchase Money First** | Monthly payment | **$1,157** |
| Date opened | **Jul 28, 2005** | Past due amount | **-** |
| Open/closed | **Open** | Terms | **480 Months** |
| Status | **Current** | Responsibility | **Individual** |
| Status updated | **Jan 2019** | Your statement | **-** |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2019 | ✓ | - | - | - | - | - | - | - | - | - | - | |
| 2018 | - | - | - | - | - | - | - | - | - | - | - | ✓ |

✓ On Time         - Data Unavailable

## Contact info

| | |
|---|---|
| Address | **8950 CYPRESS WATERS BLVD COPPELL, TX 75019** |
| Phone number | **(888) 480-2432** |

## Comments

**Account information disputed by consumer**



Prepared For **ROBERT GOSS**    Date generated: Jun 8, 2020



● **SELECT PORTFOLIO SVCIN**                                                                $237,547
**Exceptional** payment history                                              Balance updated May 11, 2020

## Account info

| | | | |
|---|---|---|---|
| Account name | **SELECT PORTFOLIO SVCIN** | Balance | **$237,547** |
| Account number | **277002XXXXXXX** | Balance updated | **May 11, 2020** |
| Original creditor | - | Original balance | **$208,900** |
| Company sold | - | Paid off | **0%** |
| Account type | **Conventional Real Estate Loan, Including Purchase Money First** | Monthly payment | **$1,161** |
| Date opened | **Jul 28, 2005** | Past due amount | - |
| Open/closed | **Open** | Terms | **588 Months** |
| Status | **Current** | Responsibility | **Individual** |
| Status updated | **May 2020** | Your statement | - |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2020 | ✓ | ✓ | ✓ | ✓ | ✓ | - | - | - | - | - | - | - |
| 2019 | - | - | - | - | - | - | - | - | - | - | - | ✓ |

✓ On Time            - Data Unavailable

## Contact info

| | |
|---|---|
| Address | **PO BOX 65250 SALT LAKE CITY, UT 84165** |
| Phone number | **By mail only** |

## Comments

-



Prepared For **ROBERT GOSS**    Date generated: Jun 8, 2020

**CITIMORTGAGE INC**                                                                                      Closed
6 late payments

### Account info

| | | | |
|---|---|---|---|
| Account name | **CITIMORTGAGE INC** | Balance | - |
| Account number | **216117XXX** | Balance updated | **Aug 31, 2016** |
| Original creditor | - | Original balance | **$208,900** |
| Company sold | - | Monthly payment | - |
| Account type | **Conventional Real Estate Loan, Including Purchase Money First** | Past due amount | - |
| | | Terms | **480 Months** |
| Date opened | **Jul 28, 2005** | Responsibility | **Individual** |
| Open/closed | **Closed** | Your statement | - |
| Status | **Account transferred to another office** | | |
| Status updated | **Aug 2016** | | |

### Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | 30 | ✓ | 30 | 30 | - | 60 | 60 | NA | - | - | - | - |
| 2015 | - | - | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | 30 | ✓ |
| 2014 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2013 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2012 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2011 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2010 | - | - | - | - | - | - | - | - | - | - | - | - |
| 2009 | - | - | - | - | - | - | - | - | ✓ | ✓ | ✓ | - |

✓ On Time                      30 30 Days Late            60 60 Days Late

NA No Applicable Payment History        - Data Unavailable

### Contact info

| | |
|---|---|
| Address | **PO BOX 9438 GAITHERSBURG, MD 20898** |
| Phone number | **(800) 283-7918** |

### Comments

**Account information disputed by consumer**

# EXHIBIT 7



Prepared For
**ROBERT L. GOSS**
Personal & confidential
**Date generated:** Oct 11, 2023

## At a glance



FICO® Score 8

**776**  FICO SCORE 8
Experian data Oct 11, 2023

300 ——————————————————————————— 850
Very Good



**Account summary**

| | |
|---|---|
| Open accounts | 5 |
| Self-reported accounts | 0 |
| Accounts ever late | 0 |
| Closed accounts | 5 |
| Collections | 0 |
| Average account age | 7 yrs 6 mos |
| Oldest account | 18 yrs 3 mos |



**Overall credit usage**

**29 %**

■ Credit used: **$5,166**
■ Credit limit: **$18,000**

**Debt summary**

| | |
|---|---|
| Credit card and credit line debt | $5,166 |
| Self-reported account balance | $0 |
| Loan debt | $245,672 |
| Collections debt | $0 |
| Total debt | $250,838 |



Prepared For **ROBERT L. GOSS**   Date generated: Oct 11, 2023

● **SELECT PORTFOLIO SVCIN**                                                                                        $230,110
**Exceptional** payment history                                                                          Balance updated **Oct 10, 2023**

### 🔡 Account info

| | | | |
|---|---|---|---|
| Account name | **SELECT PORTFOLIO SVCIN** | Balance | **$230,110** |
| Account number | **277002XXXXXXX** | Balance updated | **Oct 10, 2023** |
| Original creditor | **-** | Original balance | **$208,900** |
| Company sold | **-** | Paid off | **0%** |
| Account type | **Mortgage** | Monthly payment | **$1,335** |
| Date opened | **Jul 28, 2005** | Last Payment Date | **Sep 29, 2023** |
| Open/closed | **Open** | Terms | **49 Years** |
| Status | **Open/Never late.** | Responsibility | **Individual** |
| Status updated | **Oct 2023** | Your statement | **-** |

### $ Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2023 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | - | - |
| 2022 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2021 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2020 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| 2019 | - | - | - | - | - | - | - | - | - | - | - | ✓ |

✓ Current / Terms met          - Data Unavailable

### 🗇 Contact info

| | |
|---|---|
| Address | **PO BOX 65250 SALT LAKE CITY, UT 84165** |
| Phone number | **By mail only** |

### 🗋 Comments

-

# EXHIBIT 8

**MICHIGAN SCHOOLS AND GOVERNMENT CREDIT UNION**
40400 Garfield Road
Clinton Township, MI 48038
(586) 263-8800



**Adverse Action Notice**

ROBERT LEE GOSS JR

6263 MALVERN DRIVE

TROY, MI 48098

Date: __06/09/20__

Member's Name: __ROBERT LEE GOSS JR__

Member/Account Number: _____******7721-0007__

Member's Address: __6263 Malvern Drive Troy MI 48098__

Description of Account, Transaction, or Requested Credit: __UNSECURED (FIXED)__

## ACTION TAKEN AFFECTING CREDIT REQUEST OR EXISTING CREDIT

Date of Loan Request: __06/09/20__

Amount of Loan Requested $ __40,000.00__

- ☐ We are unable to process your application because we require the following information to make a decision:
- ☐ Your credit has been terminated for the following account:

- ☐ If we do not receive this information by _____ we will be unable to consider your application.
- ☐ We are unable to extend credit on the terms you requested but can offer credit on the following terms:

- ☒ We are unable to extend credit to you at this time.
- ☐ Your credit limit has been decreased to $_____
- ☐ We are unable to honor your request to increase your credit limit.
- ☐ Other:_____

If this offer is acceptable to you, please notify us no later than _____ at the address at the top of this notice.

## ACTION TAKEN AFFECTING SHARE DRAFT/CHECKING OR OTHER ACCOUNT OR SERVICE

- ☐ At this time we are unable to offer you:
- ☐ We have terminated/closed your:
- ☐ We have suspended your:
- ☐ Other:

| | | |
|---|---|---|
| ☐ ATM card | ☐ Debit card | ☐ Share draft/checking account |
| ☐ ATM card | ☐ Debit card | ☐ Share draft/checking account |
| ☐ ATM card | ☐ Debit card | ☐ Share draft/checking account |

## PART I – PRINCIPAL REASON(S) FOR CREDIT DENIAL, TERMINATION, OR OTHER ACTION TAKEN

*This section must be completed in all instances.*

- ☐ Incomplete identity information
- ☐ Unable to verify identity
- ☐ Credit application incomplete
- ☐ Insufficient number of credit references provided
- ☐ Unacceptable type of credit references provided
- ☐ Unable to verify credit references
- ☐ Temporary or irregular employment
- ☐ Unable to verify employment
- ☐ Length of employment
- ☒ Income insufficient for amount of credit requested
- ☒ Excessive obligations in relation to income
- ☐ Unable to verify income
- ☐ Length of residence
- ☐ Temporary residence
- ☐ Unable to verify residence
- ☐ No credit file

- ☐ Limited credit experience
- ☐ Poor credit performance with us
- ☐ Delinquent past or present credit obligations with others
- ☐ Collection action or judgment
- ☐ Garnishment or attachment
- ☐ Foreclosure or repossession
- ☐ Bankruptcy
- ☐ Number of recent inquiries on credit bureau report
- ☐ Value or type of collateral not sufficient
- ☐ We do not offer the type of credit requested
- ☐ You are not eligible for membership in this credit union
- ☐ Other, specify:

### PLEASE SEE NEXT PAGE FOR EQUAL CREDIT OPPORTUNITY ACT NOTICE

**FOR CREDIT UNION USE ONLY**

Employee initials: __566__

Date mailed or delivered: __06/09/20__

© CUNA Mutual Group 1980, 82, 84, 86, 90, 2000, 01, 03, 06-08, 10-12 All Rights Reserved

02108052-MXX08-C-1-062116 (MXX089)-e

**PART III – DISCLOSURE OF USE OF INFORMATION OBTAINED FROM AN OUTSIDE SOURCE**

This section should be completed if the credit decision was based in whole or in part on information that has been obtained from an outside source.

Section A applies only if consumer reporting agency information is used. Section B applies only if an outside source other than a consumer reporting agency is used.

## SECTION A

☒ Our credit decision was based in whole or in part on information obtained in a report from a consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

We obtained information from the following consumer reporting agency to make our decision about the action(s) on the previous page:

☒ Experian
701 Experian Parkway
P.O. Box 2002
Allen, TX 75013
1.888.397.3742
www.experian.com/reportaccess

☐ TransUnion
P.O. Box 1000
Chester, PA 19022
1.800.888.4213
www.transunion.com/myoptions

☐ Equifax
P.O. Box 740241
Atlanta, GA 30374-0241
1.800.685.1111
www.equifax.com

Name of Consumer Reporting Agency: _____**Experian**_____

Street Address: _**701 Experian Parkway P. O. Box 2002**_   Telephone Number: _**1-888-397-3742**_

City, State, Zip: _**Allen, Texas 75013**_   Website Address: _**www.experian.com/reportaccess**_

☐ We also obtained your credit score from _____ and used it in making our credit decision.
(single consumer reporting agency)

Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: _____   Date:_____   Scores range from a low of _____ to a high of _____

**Key factors that adversely affected your credit score**

## SECTION B

☐ Our credit decision was based in whole or in part on information obtained from an affiliate or from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice, for disclosure of the nature of this information. To receive this disclosure, contact the credit union.

### EQUAL CREDIT OPPORTUNITY ACT NOTICE

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is listed below.

**NOTE:** If your credit union is federally chartered, its name will end with the words "Federal Credit Union" or the letters "FCU". If your credit union is state chartered, the end of its name will not contain the word "Federal" in the last three words or the letter "F" in the last three letters if its name is abbreviated.

### FEDERAL CHARTERED CREDIT UNIONS

*Over $10 billion in assets:* Bureau of Consumer Financial Protection, 1700 G Street NW., Washington, DC 20006

*Assets $10 billion and under:* National Credit Union Administration, Office of Consumer Protection, 1775 Duke Street, Alexandria, VA 22314

### STATE CHARTERED CREDIT UNIONS

Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580

### CONNECTICUT NOTICE

THE CONNECTICUT HOME MORTGAGE DISCLOSURE ACT PROHIBITS DISCRIMINATION AGAINST HOME PURCHASE LOAN, HOME IMPROVEMENT LOAN OR OTHER MORTGAGE LOAN APPLICANTS SOLELY ON THE BASIS OF THE LOCATION OF THE PROPERTY TO BE USED AS SECURITY. THE AGENCY WHICH ENFORCES COMPLIANCE WITH THIS LAW IS:

DEPARTMENT OF BANKING
260 CONSTITUTION PLAZA
HARTFORD, CONNECTICUT 06103

IF YOU BELIEVE YOU HAVE BEEN UNFAIRLY DISCRIMINATED AGAINST, YOU MAY FILE A WRITTEN COMPLAINT WITH THE COMMISSIONER OF BANKING AT THE ABOVE ADDRESS.

**If you have any questions regarding any of the information on this document, please contact us at the credit union address or phone number listed.**

02108052-MXX08-C-1-062116 (MXX089)-e

# EXHIBIT 9





https://scratch.fi

S & B Tires & Auto Repair Services Llc
6263 Malvern Drive
Highland Park, MI 48203

**Cross River Paycheck Protection Program Loan**

Loan number          536025870817

Total amount due  February 28, 2022:

# $0.00

## Current installment (January 29 - February 28)

### Installment overview

| | |
|---|---|
| Principal | $0.00 |
| Interest | $1.50 |
| **Current installment payment** | **$0.00** |
| Fees | $0.00 |
| Past due amount | $0.00 |
| **Total due February 28, 2022** | **$0.00** |

### Account Information

| | |
|---|---|
| Statement date | 2/2/2022 |
| Loan status | Current |
| Remaining principal | $1,770.00 |
| Interest rate (1/29/2022-2/28/2022) | 1.00% |
| Maturity date | 1/28/2026 |
| Principal paid YTD | $0.00 |
| Interest paid YTD | $0.00 |

## Activity since last statement (January 2 - February 2)

| Date | Transaction | Charge | Payment |
|---|---|---|---|

*You had no activity with us last installment.*

### Past payments breakdown

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| **Total** | **$0.00** |

## Additional information

Schedule a payment online at https://scratch.fi.

**Questions?** Visit https://help.scratch.fi or call (844) 727-2684. **Hours:** M-Th 9am - 8pm and F 9am - 5pm ET.

Notice for mail payments: If you're mailing a payment, please print the form below and include it in the envelope. Be sure to write your Loan number in the memo of the check and make it out to Scratch Services, LLC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| **Loan number** | 536025870817 | **Send via USPS to:** | **For FedEx, UPS and all others:** |
| **Payment due date** | February 28, 2022 | Scratch Services, LLC | Lockbox Services - #0138654 |
| **Total due** | $0.00 | PO Box 888654 | Scratch Services, LLC |
| | | Los Angeles, CA 90088-8654 | 3440 Flair Dr. |
| | | | El Monte, CA 91731 |





https://scratch.fi

S & B Tires & Auto Repair Services Llc
6263 Malvern Drive
Highland Park, MI 48203

**Cross River Paycheck Protection Program Loan**

Loan number          536025870817

Total amount due  February 28, 2021:

# $0.00

---

## Current installment (January 28 - February 28)

### Installment overview

| | |
|---|---|
| Principal | $0.00 |
| Interest | $1.55 |
| **Current installment payment** | **$0.00** |
| Fees | $0.00 |
| Past due amount | $0.00 |
| **Total due February 28, 2021** | **$0.00** |

### Account Information

| | |
|---|---|
| Statement date | 2/1/2021 |
| Loan status | Current |
| Remaining principal | $1,770.00 |
| Interest rate (1/28/2021-2/28/2021) | 1.00% |
| Maturity date | 1/28/2026 |
| Principal paid YTD | $0.00 |
| Interest paid YTD | $0.00 |

---

## Activity since last statement

| Date | Transaction | Charge | Payment |
|---|---|---|---|
| *You had no activity with us last installment.* | | | |

### Past payments breakdown

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| **Total** | **$0.00** |

---

### Additional information

Schedule a payment online at https://scratch.fi.

**Questions?** Visit https://help.scratch.fi or call (844) 727-2684. **Hours:** M-Th 9am - 8pm and F 9am - 5pm ET.

Notice for mail payments: If you're mailing a payment, please print the form below and include it in the envelope. Be sure to write your Loan number in the memo of the check and make it out to Scratch Services, LLC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | | |
|---|---|---|---|
| **Loan number** | 536025870817 | **Send via USPS to:** | **For FedEx, UPS and all others:** |
| **Payment due date** | February 28, 2021 | Scratch Services, LLC | Lockbox Services Box #138654 |
| **Total due** | $0.00 | PO Box 398654 | 3440 Walnut Avenue |
| | | San Francisco, CA 94139-8654 | Bldg A, Window H |
| | | | Fremont, CA 94538 |

 scratch.


cross river

https://scratch.fi

S & B Tires & Auto Repair Services Llc
6263 Malvern Drive
Highland Park, MI 48203

**Cross River Paycheck Protection Program Loan**

Loan number          536025870817

Total amount due June 28, 2021:

# $0.00

## Current installment (May 29 - June 28)

### Installment overview

| | |
|---|---|
| Principal | $0.00 |
| Interest | $1.50 |
| **Current installment payment** | **$0.00** |
| Fees | $0.00 |
| Past due amount | $0.00 |
| **Total due June 28, 2021** | **$0.00** |

### Account Information

| | |
|---|---|
| Statement date | 6/2/2021 |
| Loan status | Current |
| Remaining principal | $1,770.00 |
| Interest rate (5/29/2021-6/28/2021) | 1.00% |
| Maturity date | 1/28/2026 |
| Principal paid YTD | $0.00 |
| Interest paid YTD | $0.00 |

## Activity since last statement (May 3 - June 2)

| Date | Transaction | Charge | Payment |
|---|---|---|---|

*You had no activity with us last installment.*

### Past payments breakdown

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Fees | $0.00 |
| **Total** | **$0.00** |

## Additional information

Schedule a payment online at https://scratch.fi.

**Questions?** Visit https://help.scratch.fi or call (844) 727-2684. **Hours:** M-Th 9am - 8pm and F 9am - 5pm ET.

Notice for mail payments: If you're mailing a payment, please print the form below and include it in the envelope. Be sure to write your Loan number in the memo of the check and make it out to Scratch Services, LLC.

| | | | |
|---|---|---|---|
| **Loan number** | 536025870817 | **Send via USPS to:** | **For FedEx, UPS and all others:** |
| **Payment due date** | June 28, 2021 | Scratch Services, LLC | Lockbox Services Box #138654 |
| **Total due** | $0.00 | PO Box 398654 | 3440 Walnut Avenue |
| | | San Francisco, CA 94139-8654 | Bldg A, Window H |
| | | | Fremont, CA 94538 |

# scratch.

cross river

https://scratch.fi

S & B Tires & Auto Repair Services Llc
6263 Malvern Drive
Highland Park, MI 48203

**Cross River Paycheck Protection Program Loan**

Loan number          536025870817

Total amount due  June 28, 2022:

# $41.53

*After Jul 8, 2022, a $10.00 late fee will be charged.*

## Current installment (May 29 - June 28)

| Installment overview | | Account Information | |
|---|---|---|---|
| Principal | $16.46 | Statement date | 6/2/2022 |
| Interest | $25.07 | Loan status | Current |
| **Current installment payment** | **$41.53** | Remaining principal | $1,770.00 |
| Fees | $0.00 | Interest rate (5/29/2022-6/28/2022) | 1.00% |
| Past due amount | $0.00 | Maturity date | 1/28/2026 |
| | | Principal paid YTD | $0.00 |
| **Total due June 28, 2022** | **$41.53** | Interest paid YTD | $0.00 |

## Activity since last statement (May 3 - June 2)

| Date | Transaction | Charge | Payment | Past payments breakdown | |
|---|---|---|---|---|---|
| *You had no activity with us last installment.* | | | | Principal | $0.00 |
| | | | | Interest | $0.00 |
| | | | | Fees | $0.00 |
| | | | | **Total** | **$0.00** |

**Additional information**

Schedule a payment online at https://scratch.fi.

**Questions?** Visit https://help.scratch.fi or call (844) 727-2684. **Hours:** M-Th 9am - 8pm and F 9am - 5pm ET.

Notice for mail payments: If you're mailing a payment, please print the form below and include it in the envelope. Be sure to write your Loan number in the memo of the check and make it out to Scratch Services, LLC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| **Loan number** | 536025870817 | **Send via USPS to:** | **For FedEx, UPS and all others:** |
|---|---|---|---|
| **Payment due date** | June 28, 2022 | Scratch Services, LLC | Lockbox Services - #0138654 |
| **Total due** | $41.53 | PO Box 888654 | Scratch Services, LLC |
| | | Los Angeles, CA 90088-8654 | 3440 Flair Dr. |
| | | | El Monte, CA 91731 |